IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                  )          CRIMINAL NO. 2:23-cr-48<br>)<br>AMBER DAWN HENDRICKS,          )<br>a/k/a "Amber Dawn Costello,"      )<br>)<br>Defendant.                                     ) | |

**<u>POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING</u>**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, Kristin G. Bird, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable advisory guidelines range to be a term of 121 to 151 months' imprisonment, based on a Total Offense Level of 31 and Criminal History Category of II. However, as the advisory guidelines range is higher than the statutory maximum penalty of 120 months, the guidelines are restricted to 120 months.

In accordance with § 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and consulted with the Probation Office and defense counsel. The United States does not dispute any of the sentencing factors set forth in the PSR or the guidelines range calculation and understands there to be no unresolved objections.

For the reasons outlined herein and after consideration of the PSR, the relevant conduct associated with this crime, the defendant's history and characteristics, and the defendant's criminal record, the United States respectfully seeks a downward variance and submits that a sentence of

36 months is appropriate, warranted, and not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a).

## I. Motion

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(b) and based upon the terms of the binding plea agreement in this case, to grant a one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the United States of her intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## II. Background

On May 7, 2024, the defendant was named in a one-count Criminal Information filed by the U.S. Attorney's Office in the Eastern District of Virginia, Norfolk Division. The Criminal Information charged the defendant with Possession of Firearm by Prohibited Person, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2).

On May 16, 2023, the defendant entered a guilty plea to the count charged in the Criminal Information before United States District Court Judge Jamar K. Walker. She is scheduled to appear before this Court for sentencing on October 2, 2024.

## III. Position on Sentencing and Argument

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

    A)    <u>Nature and Circumstances of the Offense</u>

In 2022, the Department of Homeland Security obtained information identifying Colin Costello ("Costello"), the defendant's paramour, as a significant methamphetamine trafficker in the Eastern District of Virginia. *See United States v. Colin Costello*, E.D. Va. Case No. 2:22-cr-126-02. The investigation also revealed Costello was in possession of numerous firearms, despite being a convicted felon. PSR ¶ 5(1). After controlled purchases of methamphetamine were made from Costello, law enforcement obtained a search warrant for the Virginia Beach residence in which Costello, the defendant, and the defendant's then-fifteen-year-old daughter resided. PSR ¶¶ 5(2), 8. Law enforcement recovered over 400 grams of methamphetamine, other controlled substances, packaging materials, scales, and approximately fourteen firearms. PSR ¶ 8. Eleven of these firearms were found in the defendant's bedroom.

The defendant was present when the search warrant was executed. PSR ¶ 8. She spoke to law enforcement and her statements were documented by Agents with Homeland Security Investigations. The defendant admitted she owned four of the firearms that were found in the home. PSR ¶ 11. She further admitted she met Costello approximately a year before and that she knew he was a felon due to an armed robbery conviction. She admitted Costello helped pick out firearms and assisted in paying for them but insisted they were her firearms. She acknowledged Costello had access to them and that his fingerprints and/or DNA would likely be found on the

firearms.  *See* PSR ¶ 11.  As for her drug use, the defendant admitted she last used methamphetamine the day before the search warrant was executed.  ECF No. 23 at 2, PSR ¶ 46.

The investigation further revealed the defendant was aware of Costello's drug trafficking activities.  She reportedly traveled with him to Georgia when he was picking up pound quantities of methamphetamine.  PSR ¶ 7.  Additionally, when asked if she knew Costello's methamphetamine source of supply, she replied, "That's not the first thing you ask when you're trying to get into a relationship.  Yeah, my name is Colin.  I'm a convicted felon.  I did thirteen years.  I sell drugs, and I buy meth.  Like it's not something you introduce."

Once the firearms were recovered, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") joined the investigation.  ATF traced each of the firearms to determine who the original purchasers were so they could investigate how Costello – a prohibited person – unlawfully came into possession of the firearms.  The trace reports for the four firearms the defendant purchased confirmed that she purchased all of them within the four months preceding the search warrant – two of which were purchased just two days before:

- January 31, 2022: Charter Arms .38 caliber revolver;



- March 3, 2022: Tisas Pistol, Model: ZIG M1911, Caliber: .45ACP;



- April 20, 2022: Merak Savunma Sanayi, Model: Charles Daly Shotgun Model 301, 12 Gauge; and




- April 20, 2022: Arex Pistol, Model: Rex Zero IS, Caliber: 9x19mm.



The remaining seven firearms found in the master bedroom, all of which the defendant would have had access to, are depicted below:









To complete each of the four purchases, the defendant was required to complete an ATF Form 4473. This form immediately notifies individuals that the information requested will be used to determine whether their receipt of a firearm is lawful, and it spells out the penalties for certain violations of the Gun Control Act.

> **WARNING:** The information you provide will be used to determine whether you are prohibited by Federal or State law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 et. seq., are punishable by up to 10 years imprisonment and/or up to a $250,000 fine. Any person who exports a firearm without a proper authorization from either the Department of Commerce or the Department of State, as applicable, is subject to a fine of not more than $1,000,000 and up to 20 years imprisonment.
>
> **Read the Notices, Instructions, and Definitions on this form.** Prepare in original only at the licensed premises (including business temporarily conducted from a qualifying gun show or event in the same State in which the premises is located) unless the transaction qualifies under 18 U.S.C. 922(c). **All entries must be handwritten in ink unless completed under ATF Rul. 2016-2. PLEASE PRINT.**

During each purchase, the defendant had to respond to Question 21(e), which asks "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" And each time, the defendant falsely indicated that she was not an unlawful user of or addicted to controlled substances, despite being an unlawful user of and addicted to methamphetamine.

> e. Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?
> Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside.
>
> [ ] Yes  [X] No
>
> Previous Editions Are Obsolete                                                ATF Form 4473 (5300.9)

Additionally, prior to concluding each purchase, the defendant signed her name directly below the certification statement on ATF Form 4473, which provides in relevant part, that "I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. … I understand that a person who answers 'yes' to any of the questions 21.b through 21.k is prohibited from receiving or possessing a firearm." The certification goes on to inform the purchaser that making any "false oral or written statement … with respect to this transaction, is a crime punishable as a felony under Federal law…"



The nature and circumstances of the defendant's offenses are quite serious. "[D]rugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). This dangerous combination exists not only in the context of drug trafficking but also when drug users possess firearms.

The defendant, a user of methamphetamine, illegally purchased four firearms and had constructive possession over seven others. However, her crimes do not end there. Her false and misleading statements during the purchase of these firearms allowed her to defeat laws designed to keep firearms out of the hands of criminals and those who are precluded by law from buying guns. After purchasing the firearms, the defendant permitted Costello – someone she knew was a

convicted violent felon and methamphetamine trafficker – to have access to them. And, it cannot be ignored that these firearms were found in a house along with nearly half a kilogram of methamphetamine, which is why the drug guidelines control in this case. The sheer number of guns, magazines, and rounds of ammunition recovered prove this was a well-fortified residence in which drug use and drug trafficking took place.

Armed drug users pose a potential danger to themselves and the community in which they live. One such danger is the possibility that they will mishandle firearms because of "drug induced changes in physiological functions, cognitive ability, and mood." *Harmelin v. Michigan*, 501 U.S. 957 (1002) (1991); *see Florence v. Board of Chosen Freeholders*, 566 U.S. 318, 332 (2012) ("The use of drugs can embolden [individuals] in aggression.").

Furthermore, the defendant's status as an armed user suggests there was a risk of violence at the residence, and that risk was elevated by the fact that Costello used the defendant's residence to store a significant quantity of methamphetamine. "[V]iolent crime may occur as part of the drug business or culture." *Harmelin*, 501 U.S. at 1002. Many courts have acknowledged the dangers posed by the combination of drugs and guns. *See United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014) ("[D]rug use, including marijuana use, frequently coincides with violence."); *United States* v. *Patterson*, 431 F.3d 832, 836 (5th Cir. 2005) ("[U]nlawful users of controlled substances pose a risk to society if permitted to bear arms."), cert. denied, 547 U.S. 1138 (2006); *United States v. Yancey*, 621 F.3d 681, 685 (7th Cir. 2010) ("[H]abitual drug abusers … are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms."); *United States* v. *Seay*, 620 F.3d 919, 925 (8th Cir. 2010) ("[I]n passing § 922(g)(3), Congress expressed its intention to 'keep firearms out of the possession of drug abusers, a dangerous class of individuals.'") (citation omitted), cert. denied, 562 U.S. 1191 (2011); *United States* v.

*Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) ("[W]e see the same amount of danger in allowing habitual drug users to traffic in firearms as we see in allowing felons and mentally ill people to do so.").

Armed drug users also endanger law enforcement. "[D]ue to the illegal nature of their activities, drug users and addicts would be more likely than other citizens to have hostile run-ins with law enforcement officers," and such encounters "threaten the safety" of the officers "when guns are involved." *United States v. Carter*, 750 F.3d 462, 469 (4th Cir.), cert. denied, 574 U.S. 907 (2014); *see Michigan v. Summers*, 452 U.S. 692, 702 (1981) ("[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence.").

Methamphetamine is a serious drug that does significant harm to its users. It is "a highly addictive central nervous system stimulant" and its "use is associated with a range of health harms, including psychosis and other mental disorders, cardiovascular and renal dysfunction, infectious disease transmission, and overdose."[1] Accordingly, the defendant's regular usage of this drug in combination with her possession of multiple firearms, posed a great danger to others in her home and in her community.

B) <u>History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)</u>

1. Personal and Family Data

The defendant is a 40-year-old woman who enjoys overall general good health. PSR ¶ 43. Her childhood was fraught with instability caused by her mother's history of alcohol and drug abuse. PSR ¶ 35. Exposure to her mother's substance abuse undoubtedly precipitated the defendant's own history of substance abuse. PSR ¶ 46. In her early teenage years, the defendant

---

[1] *See* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912a1.htm; *see generally* Quinones, "The New Meth," The Atlantic, Oct. 18, 2021, *available at* https://www.theatlantic.com/magazine/archive/2021/11/the-new-meth/620174/ (reporting on the increased trafficking of chemically pure methamphetamine and a concomitant rise in severe mental illness and homelessness).

began using alcohol and marijuana. *Id*. Her drug abuse quickly escalated though to harder substances like cocaine, "crack" cocaine, and methamphetamine. *Id*. By the time she reached her 30s, the defendant had been a daily user of heroin, and a less frequent user of fentanyl, LSD, and mushrooms. *Id*. At the time of this offense, the defendant was a daily user of methamphetamine, and her use continued even after she spent approximately five months in state custody.

The instability in her home life, combined with significant drug and alcohol abuse, surely contributed to her decision to drop out of high school in the eleventh grade. PSR ¶ 48. The failure to obtain a high school diploma however did not mean she was incapable of gaining and maintaining employment. PSR ¶¶ 53-55. She has a work history that indicates she is intelligent and proficient in accounting. *Id*.

The defendant is currently taking medications to treat anxiety and depression, but she would likely benefit from a more in-depth mental health evaluation, particularly given her background. The United States respectfully requests that the defendant be recommended for mental health treatment, substance abuse treatment, and educational and/or vocational programs while in the Bureau of Prisons.

    2.    Criminal History

Despite being involved with drugs for most of her life, the defendant does not have a lengthy criminal history. She was initially charged in the Virginia Beach General District Court for offenses related to this incident. PSR ¶ 34. She was held without bond until the charges were *nolle prossed* in October 2022. PSR ¶¶ 34, 51.

While detained,[2] and upon her release, she continued her relationship with Costello and

---

[2] The United States is in possession of recorded jail conversations between the defendant and Costello while she was detained in Virginia Beach.

reportedly married him. PSR ¶ 40. In or about late April 2023, while Costello was housed at Western Tidewater Regional Jail on federal offenses, the defendant, J.F., and Costello hatched a plan to introduce contraband into the jail.[3] *See* PSR ¶ 28.

On April 30 and May 1, 2023, the jail captured video recordings of the defendant, Costello, and J.F. discussing their multi-phase, multi-night plan to introduce contraband into the jail. During the April 30, 2023 calls, the defendant told Costello she had previously walked through the woods at night scoping out the jail trying to determine which block he was in. Additionally, while being recorded, the defendant used Google Earth to identify which block Costello was housed in and J.F. pulled up a video of how to drill into the glass at the jail.

During the May 1, 2023 calls, the defendant expressed frustration that she was only "one pod off" when she snuck through the woods previously. She made a list of approximately ten items she and Costello planned on smuggling into the jail. Additionally, having used a drill, she showed him where she had practiced drilling holes into a piece of acrylic glass she had in the house. They discussed that lubricant would be needed, that the torque on the drill had to be turned all the way up, that the light on the drill needed to be covered, and that it took less than a minute to drill the hole. When she told him there would be noise associated with the drilling, Costello told her another inmate would turn on the shower to mask the sound. *Id*. They also discussed Costello's plans to cover the hole, but some of the materials would need to be provided by the defendant. The defendant insisted on executing this plan over at least two nights – the first night she would drill the hole and the second night she would deliver the contraband. Her rationale was

---

[3] The supplemental details of this offense were documented in Incident Reports by officers at Western Tidewater Regional Jail and during recorded video visits. The United States respectfully submits a more thorough recitation of the criminal conduct is appropriate for purposes of argument and to ensure an appropriate classification by the Bureau of Prisons in the event the Court sentences the defendant to a term of imprisonment.

that if she was caught drilling without contraband, then "worse comes to worse it's a trespassing charge." During one of the calls on this date, the defendant admitted she was smoking methamphetamine daily.

Having discovered this nefarious plot, the jail activated its Emergency Response Team and developed a plan to apprehend the defendant and any accomplices before the contraband could be introduced. Officers were positioned in the woods when, at approximately 4:00 a.m. on May 2, 2023, the defendant and J.F. snuck onto the property. Officers apprehended and searched both individuals. The defendant was found in possession of the drill, several tools needed to carry out their plan, and items "wrapped for smuggling." *Id*.

The defendant was prosecuted in the Suffolk Circuit Court and received a sentence of twenty years with all but five years suspended. *Id*. The Circuit Court ordered her active sentence to be served consecutive to any other sentence. *Id*. The remaining fifteen years were suspended conditioned upon a five-year period of supervised probation and uniform good behavior for fifteen years upon release. *Id*.

The United States concedes the defendant has already been sentenced for her criminal conduct in Suffolk and therefore does not seek an enhanced sentence based on this conduct. However, the defendant was still regularly using methamphetamine when she committed these offenses. Accordingly, the United States has highlighted this incident because it is another example of the type of poor judgment, the type of dangerous conduct, the defendant has engaged in while being a regular user of controlled substances and why it is wholly appropriate that Congress has made it illegal for individuals like her to possess firearms.

    C)    <u>Relevant Sentencing Factors Outlined in 18 U.S.C. 3553(a)(2)</u>

This is not the typical "user in possession of a firearm" case for several reasons. First, the

defendant purchased four firearms and was in constructive possession of at least seven more. She was in a relationship and residing with a methamphetamine trafficker. She permitted him access to the firearms and in her house was over 400 grams of methamphetamine at the time of the search warrant.

The guidelines, which have been correctly calculated, exceed the statutory maximum because of the amount of methamphetamine found in the residence. In the defendant's position on sentencing, there is a suggestion that had the defendant's guidelines been calculated under §2K2.1, the resulting recommendation would have been 15 to 21 months' imprisonment. ECF 32 at 5. The United States submits this is a conservative calculation. The United States estimates that the more accurate calculation is as follows:

- **20 points** (§2K2.1(a)(4) – because the firearm on the bed was equipped with a 15+ round magazine, and the defendant was prohibited based on the fact that she was a user (*see* n.3 (prohibited person means any person described in 922(g)…)))

- **4 points** (§2K2.1(b)(1) – because she had immediate access to eleven firearms in her bedroom)

- **4 points** (§2K2.1(b)(6) – the defendant possessed any firearm with knowledge, intent or reason to believe it would be used or possessed in connection with another felony offense – in this case possession with intent to distribute methamphetamine)

Once three points are deducted for acceptance of responsibility, that would result in an Offense Conduct Level of 25. Her criminal history category is II, which would result in an advisory guidelines range of 63 to 78 months. Moreover, that range encompasses the average sentence for all individuals convicted of violating § 922(g) which is 68 months.[4]

However, the United States, after considering all of the 3553(a) factors, is seeking a sentence of 36 months, which represents a significant downward variance from both the advisory

---

[4] https://www.ussc.gov/research/quick-facts/section-922g-firearms

guidelines range, pursuant to §2D1.1, and the statutory maximum. Additionally, pursuant to the Policy Statement outlined in U.S.S.G. §5G1.3(d), the United States respectfully submits that in order to achieve reasonable punishment for the instant offense, any period of incarceration ordered by this Court should be served consecutive to the five-year state sentence.

A sentence of 36 months for her federal conviction is necessary to protect the public from the defendant. As noted above, by being an armed drug user, she represented a danger to those in her home and in her community. Even after her initial arrest and detention, the defendant continued to engage in criminal behavior that posed a danger to others because the smuggling and dissemination of contraband could result in harm to inmates and correctional officers.

The recommended sentence is also needed to achieve both general and specific deterrence. There is no indication that the defendant would have stopped engaging in criminal conduct but for her arrest in May 2023. Although the defendant had no criminal history prior to this incident and the Suffolk case, she was a regular user of controlled substances. This means that each and every time she possessed/ingested heroin, fentanyl, cocaine, and methamphetamine, she committed a felony in the Commonwealth of Virginia. *See* Virginia Code § 18.2-250. Moreover, each time she lied on the ATF Form 4473, she committed a federal offense punishable by up to 120 months in prison. And, rather than taking steps to better herself or to seek treatment upon her release by Virginia Beach, the defendant chose to take significant steps towards smuggling items into the jail. A sentence of 36 months will hopefully serve to deter the defendant and others from committing similar crimes in the future.

The defendant is an intelligent 40-year-old adult who needs to get her life in order by first acknowledging her drug addiction and taking advantage of treatment opportunities she has needed for nearly 25 years but has not sought. The United States' recommendation of a sentence of 36

months represents a downward variance that seeks to account for the nature and circumstances of the offenses and the defendant's personal history. It further seeks to balance these factors with the essential need to promote respect for the law and to protect the public from further crimes committed by the defendant.

### IV. Conclusion

Taking all the Section 3553(a) factors into account, the government submits that a sentence of 36 months is appropriate and would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:     /s/
Kristin G. Bird
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689
kristin.bird@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on September 25, 2024, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

I also certify that on September 25, 2024, I sent by electronic mail a true and correct copy of the foregoing to the following:

**Jeffrey A. Noll**
Senior United States Probation Officer
827 Diligence Drive, Suite 210
Newport News, Virginia 23606
(757) 223-4663

By: _____/s/_____
Kristin G. Bird
Assistant United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number:    (757) 441-6331
Facsimile Number:  (757) 441-6689
kristin.bird@usdoj.gov